749 A.2d 394 (2000)
330 N.J. Super. 231
Joao ZACARIAS, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY and George Sincox, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 2000.
Decided April 20, 2000.
Gary Alan Blaustein, Union, for plaintiff-appellant.
William H. Mergner, Jr., Cedar Knolls, for defendants-respondents (Leary, Bride, Tinker & Moran, attorneys; John G. Tinker, Jr., on the brief).
Before Judges PRESSLER, KIMMELMAN and CIANCIA.
The opinion of the court was delivered by KIMMELMAN, J.A.D.
Plaintiff Joao Zacarias appeals from the entry on May 15, 1998, of a summary judgment in favor of defendant dismissing plaintiff's complaint in which he sought a declaratory judgment that defendant was obligated to indemnify him with respect to *395 a negligence action brought against him by his wife for injuries sustained in an accident while riding in a twenty-foot outboard recreational boat owned by plaintiff.
At the time of the purchase of the boat in 1989, plaintiff obtained from defendant through its agent, co-defendant George Sincox, an "Allstate Boatowners Policy." The policy was renewed annually thereafter.
On November 27, 1995, Mrs. Zacarias filed an action against her husband, plaintiff, for damages for injuries she allegedly sustained because of his negligent operation of the boat. Defendant disclaimed coverage but agreed to provide a defense for plaintiff under a reservation of rights agreement. Plaintiff then filed a declaratory action against defendant to adjudicate coverage. The two suits were consolidated for discovery and trial.
Defendant moved for summary judgment asserting that, as an insured person under its policy, Mrs. Zacarias was precluded from coverage. Plaintiff countered that (1) the preclusion of his spouse from coverage was against public policy and that (2) defendant should be held responsible on the theory of respondeat superior because its agent had not brought the exclusionary clause to his attention.
While the record does not incorporate the declarations page of the policy, it does appear that the policy provides for "Watercraft Liability." However, under the heading labeled "Losses We Do Not Cover," the policy provides:
We do not cover bodily injury to an insured person or property damage to property owned by an insured person.
An "insured person" under the policy means "the person named on the declaration page as the insured and that person's resident spouse." Thus, under defendant's policy, Mrs. Zacarias, as a resident spouse, was an insured person for whom bodily injury was excluded from coverage.
Although not raised as a direct issue on appeal by plaintiff, it is suggested that insurance contracts are subject to special rules of interpretation since they are contracts of adhesion between parties of unequal bargaining power. Consequently, the policy in question should be construed to comport with plaintiff's reasonable expectation of coverage. Gibson v. Callaghan, 158 N.J. 662, 669-71, 730 A.2d 1278 (1999); Doto v. Russo, 140 N.J. 544, 555-57, 659 A.2d 1371 (1995).
However, we find the language of defendant's policy to be free from ambiguity. The words of the policy are to be given their plain and ordinary meaning. Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990). As a resident spouse of the named insured, Mrs. Zacarias is an insured person. The clear language of the policy will not support any expectation of coverage for Mrs. Zacarias' accident. Therefore, the personal injury loss sustained by her is not covered.
Unless the abolition of interspousal immunity, Merenoff v. Merenoff, 76 N.J. 535, 388 A.2d 951 (1978), has rendered the exclusion of Mrs. Zacarias from coverage contrary to the State's legislatively established public policy, we are bound by the pertinent ruling of the Supreme Court in Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 161 A.2d 717 (1960), where the Court said:
When the terms of an insurance contract are clear, it is the function of the court to enforce it as written and not to make a better contract for either of the parties.

[Id. at 43, 161 A.2d 717.]
See also State v. Signo Trading Int'l, Inc., 130 N.J. 51, 66, 612 A.2d 932 (1992) and Summit Assocs., Inc. v. Liberty Mut. Fire Ins. Co., 229 N.J.Super. 56, 63, 550 A.2d 1235 (App.Div.1988).
Following the Merenoff case, this court held that the exclusion from coverage of intra-family torts in a homeowner's policy was not void as against public policy. Foley v. Foley, 173 N.J.Super. 256, 414 A.2d *396 34 (App.Div.1980). We reasoned that there is no public policy that requires a homeowner to obtain an insurance policy protecting him/her against actions that might be brought against him/her by anybody. Id. at 259, 414 A.2d 34. See also Horesh v. State Farm Fire & Cas. Co., 265 N.J.Super. 32, 36-37, 625 A.2d 541 (App. Div.1993) (following Foley, supra, and validating a similar exclusionary clause applying to resident relatives of the insured).
We may not analogize this matter to the pattern of liability insurance coverage for automobiles. In the case of automobiles principally garaged in this state, the Legislature has mandated compulsory automobile liability insurance coverage. N.J.S.A. 39:6A-3. Because of this mandate, claims brought by members of the named insured's household may not be excluded from coverage. N.J.S.A. 39:6A-4. In Weitz v. Allstate Ins. Co., 273 N.J.Super. 548, 551-52, 642 A.2d 1040 (App.Div.1994), this court noted that the scope of coverage of a primary automobile insurance policy was controlled by law. However, we concluded that other insurance policies "unencumbered" by statutory requirements were governed by the plain language of the policy. Ibid.
In the absence of a legislative mandate requiring liability insurance coverage for boat owners, we may not establish a corresponding public policy in this case. Thus, because she was an "insured," the claim of Mrs. Zacarias was not covered. It is clear that the defendant's insurance policy, as written, does not run afoul of the expressed public policy of this State.
Plaintiff's alternative claim for negligence against the agent of defendant who sold the policy of insurance is likewise without merit.
For the foregoing reasons, the summary judgment rendered May 15, 1998, is affirmed.
PRESSLER, P.J.A.D., dissenting.
I respectfully dissent.
Once again we have before us a nonautomobile general comprehensive and liability policy of insurance containing an intra-family exclusion. Since automobile insurance is mandatory and intended to protect all motorists, we have had no difficulty in concluding that, as a matter of public policy, the insurance contract may not exclude coverage for the named insured's liability to members of his own family who sustain injury as a result of his negligence. Kish v. Motor Club of Am. Ins. Co., 108 N.J.Super. 405, 261 A.2d 662 (App.Div.), certif. denied, 55 N.J. 595, 264 A.2d 68 (1970). See also Horesh v. State Farm Fire & Cas. Co., 265 N.J.Super. 32, 37, 625 A.2d 541 (App.Div. 1993). We have thus far, however, concluded otherwise in respect of homeowner's insurance, which is not statutorily mandated, and we have sustained, against the public policy argument, the exclusion by which the carrier excepts from liability coverage claims against the named insured made by members of his household. Horesh, supra, 265 N.J.Super. at 37, 625 A.2d 541; Foley v. Foley, 173 N.J.Super. 256, 414 A.2d 34 (App.Div.1980). The policy here in question is a boat policy, and since not mandated by statute, falls essentially into the same category as homeowner's insurance.
I dissented in Horesh, supra, 265 N.J.Super. at 39, 625 A.2d 541, without confronting the basic public policy issue, having concluded that the family exclusion could not, as a matter of reasonable expectation and fundamental fairness, be applied in that case because the liability claim there made by the named insured husband on behalf of his infant son was not a direct claim against his wife, the boy's mother. Rather, the husband had sued the tortfeasor who, he claimed, was responsible for the boy's injury, and the tortfeasor, seeking indemnity or contribution from the wife, in whose care the boy was at the time of his injury, had impleaded her on a theory of wanton and wilful carelessness. I was of the view that the family exclusion *397 did not and was not meant to apply in those circumstances. I need not repeat here what I said there.
The basis of my disagreement with my colleagues here once again does not require me to address the basic public policy issue. My focus is narrower. These are my premises. I believe it is virtually axiomatic that the named insured, in buying a liability policy, must be credited with the reasonable expectation that all legally cognizable liability claims against him arising out of his use of the insured premises here the boatare subject to coverage. There is nothing in this record to suggest the contrary or to support the conclusion that plaintiff knew of the exclusion or had been advised thereof by the agent who sold him the policy. Indeed, it is clear that the agent did not so advise him. And there is, of course, no doubt that interspousal liability claims are legally cognizable, Merenoff v. Merenoff, 76 N.J. 535, 388 A.2d 951 (1978), and that at least to some extent, claims by children against parents are as well. Foldi v. Jeffries, 93 N.J. 533, 461 A.2d 1145 (1983).
It is also well-settled that insurance policies are contracts of adhesion required to be strictly construed against the insurer and in favor of the insured in order to meet the insured's reasonable expectations. See, e.g., Gibson v. Callaghan, 158 N.J. 662, 671, 730 A.2d 1278 (1999); United Serv. Auto. Ass'n v. Turck, 156 N.J. 480, 492-493, 721 A.2d 1 (1998); American Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41, 713 A.2d 1007 (1998); Harr v. Allstate Insurance Co., 54 N.J. 287, 303-304, 255 A.2d 208 (1969). See also Restatement (Second) of Contracts, §§ 211-212 (1981). That principle governs not only the interpretation of ambiguities in the policy. As Justice Stein pointed out in Gibson v. Callaghan, supra, 158 N.J. at 671, 730 A.2d 1278, "[i]n exceptional circumstances, `even an unambiguous contract has been interpreted contrary to its plain meaning so as to fulfill the reasonable expectation of the insured.'" (quoting Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 35-36, 548 A.2d 188 (1988)). Nor will a plainly stated exclusion be enforced if doing so will defeat the essential purpose of the policy. Sparks v. St. Paul Insurance Co., 100 N.J. 325, 336, 495 A.2d 406 (1985); Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482-484, 488-489, 170 A.2d 22 (1961).
And finally, I think it clear that we cannot impose upon the insured the onus of reading through and understanding the interrelationship of coverage, exclusion and exception clauses, whose meaning is not self-contained and self-evident but requires, rather, cross-referencing to other unidentified sections of the policy and whose meaning, once divined, is contrary to what the declarations page otherwise reasonably suggests. Thus, as we said in Lehrhoff v. Aetna Cas. and Sur. Co., 271 N.J.Super. 340, 346-347, 638 A.2d 889 (App.Div.1994):
There has been little judicial consideration of the import of the declaration page of an insurance policy in terms of the construction of the policy as a whole and in terms of its capacity to define the insured's reasonable expectations of coverage. We, however, regard the declaration page as having signal importance in these respects. A personal automobile insurance policy is a bulky document, arcane and abstruse in the extreme to the uninitiated, unversed and, therefore, typical policy-holder. We are persuaded, therefore, that a conscientious policyholder, upon receiving the policy, would likely examine the declaration page to assure himself that the coverages and their amounts, the identity of the insured vehicle, and the other basic information appearing thereon are accurate and in accord with his understandings of what he is purchasing. We deem it unlikely that once having done so, the average automobile policyholder would then undertake to attempt to analyze the entire policy in order to penetrate its layers of cross-referenced, qualified, *398 and requalified meanings. Nor do we deem it likely that the average policyholder could successfully chart his own way through the shoals and reefs of exclusions, exceptions to exclusions, conditions and limitations, and all the rest of the qualifying fine print, whether or not in so-called plain language. We are, therefore, convinced that it is the declaration page, the one page of the policy tailored to the particular insured and not merely boilerplate, which must be deemed to define coverage and the insured's expectation of coverage. And we are also convinced that reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page itself clearly so warns the insured.
Applying these principles, I am persuaded that enforcement of the family exclusion here would violate the insured's reasonable expectations. To begin with, the declarations page of this policy identifies only plaintiff-husband, Joao Zacarias. Nor is he even referred to as the "named insured," a designation which, to a careful reader of the declarations page, might suggest some limitation or qualification to come. Certainly the declarations page in no way itself suggests that anyone else is an insured. This is, as we have pointed out, both a casualty and a liability policy. The terms of the liability coverage appear on page ten, which one could locate there either by consulting the table of contents on page one of the policy or by simply flipping through the policy. The section begins with the heading "Losses We Cover." Those losses are defined as
all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage resulting from the ownership, maintenance, or use of covered watercraft, boat equipment or boat trailers.
There is, of course, nothing in this definition to suggest that there is any insured person other than the person identified on the declarations page. Thus the sole person who is named on the declarations page could safely assume that if he became legally obligated to pay damages to a family member because of his negligence, he would be covered therefor.
Then comes the second portion of the liability coverage entitled "Losses We Do not Cover." In addition to the usual exclusions for intentional or criminal conduct of an insured person, illegal or business use of the boat, workers' compensation claims, and the like, is paragraph 2, which provides in full that:
We do not cover bodily injury to an insured person or property damage to property owned by an insured person.
There is still nothing to suggest to the reader of the liability coverage that there is any insured person subject to this exclusion other than the insured named in the declarations page.
In order for the reader of the policy to determine who is intended by the insurer to be embraced within the phrase "insured person" for purposes of the liability exclusion, he must refer to paragraph 3 of the definition section appearing on page three of the policy and to which nothing in the liability coverage sections on page ten directs him. And even though the text of the liability exclusion clause does not use the pronoun "you" or "your," he would nevertheless have to perceive the relevance and significance of the page three, paragraph 1 definition of "you" or "your" as including the resident spouse of the insured named on the declarations page. Then, if he properly completes this unmapped exercise in contract construction and if does so at the time the policy is delivered to himboth of which eventualities I regard as remote in the case of the average buyer of insurancehe may come to understand that even though he is exclusively identified on the declarations page and thus appears to be the only insured, an "insured person" also includes "any relative" and "any dependent *399 person in your care" if "resident in your household." And then, if he is quick witted or experienced in such matters, he may finally indeed come to realize that the "insured person" whose liability claims are excluded from coverage on page ten are the members of his family with whom he lives and who are free, as a matter of law, to sue him for negligence and to obtain damages for personal injury from him.
I am convinced that such an exclusion, which by its nature is prima facie contrary to the insured's reasonable expectations and whose import is so obscure and obscured, cannot be enforced, and at least one other jurisdiction has declined to do essentially on these grounds. See State Farm Mut. Auto. Ins. v. Dimmer, 160 Ariz. 453, 773 P.2d 1012 (1989). There are, in fact, other boat insurers whose policies do not contain this exclusion,[1] and a buyer of insurance should at least know what he is buying so that he can make a reasonable choice among available options. The insurer here could so easily have made this exclusion clear. Either the term "insured person" as used in the exclusion could have expressly incorporated by reference the definition appearing on page three or, even more appropriately, the declarations page could have made clear that "insured person" for liability purposes was not merely the sole person named thereon but also included the persons specified in the definition. By choosing to do neither, the insurer, in my opinion, must be deemed to have forfeited the benefit of the exclusion.
I would reverse the summary judgment in favor of defendant and direct the entry of summary judgment on plaintiff's cross motion.
NOTES
[1] The report of plaintiff's insurance expert submitted in opposition to defendant's motion for summary judgment and in support of his cross motion, identifies at least three such insurers, all of whom are well known and highly reputable.