[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT'S MOTION TO DISMISS
Procedural History
The plaintiff, Susan Morgan, brings this action against the defendants, Ruthe Bubar, Robert Carini and Lora Castronova, individually, and in their official capacities as state of Connecticut correctional employees. The complaint, filed June 17, 2002, alleges defamation by Bubar in counts one and three, violations of42 U.S.C. § 1983 by Carini in count two and violation of42 U.S.C. § 1983 by Castronova in count four. On July 3, 2002, the defendants filed a motion to dismiss the plaintiff's complaint on the ground that the court lacks subject matter jurisdiction, based on sovereign and statutory immunity. This court granted the defendants' motion on July 26, 2002, without having reviewed the plaintiff's memorandum of law in opposition, which was filed on July 25, 2002. On August 7, 2002, the plaintiff filed a motion to reconsider, stating that she had filed a motion on July 9, 2002, for an extension of time to file a memorandum of law in opposition to defendants' motion. The plaintiff argued that the court did not have the benefit of a memorandum of law in opposition to the defendants' motion to dismiss. On August 9, 2002, this court granted the plaintiff's motion to reconsider. The defendants' motion to dismiss is before this court again, this time, with the benefit of briefs from both parties.
 Facts
The facts as alleged in the plaintiff's complaint are as follows. The plaintiff and defendants are employed by the state of Connecticut at the York Correctional Institute (York), located in Niantic, Connecticut. Both the plaintiff and Bubar are supervised by Carini, who in turn is supervised by Castronova. On August 8, 2000, Bubar provided to Castronova a written memorandum that contained defamatory and untrue statements about the plaintiff. It states in part, "[The plaintiff's] anger and her unprofessional behavior directed towards me continues in an unresolved CT Page 2050 pattern . . . I find [the plaintiff's] more recent verbal accusations and written documentation extremely threatening to me, especially due to the fact that [the plaintiff's] past history of anger resulted in her physically assaulting me in the workplace. Based on these factors, I am acutely aware that [the plaintiff] has demonstrated a true capacity to harm, not only my professional character and reputation, but also [the plaintiff] presents a very real threat of physical danger to me. I still do not feel safe." (Plaintiff's Complaint, count three, ¶ 4.) The plaintiff filed a written incident report and requested an investigation of the allegations made by Bubar on August 8 and August 10, 2002. Castronova did not do so despite a requirement pursuant to Executive Order No. Sixteen.[1]
The plaintiff further alleges that on August 10, 2000, Bubar verbally and falsely stated to several other York employees: "[The plaintiff] put her hands on my neck and choked me so hard I could not feel my feet." (Plaintiff's Complaint, count one, ¶ 4.) Carini was notified on this same day, but he did not initiate an investigation despite being required to do so. Additionally, the plaintiff alleges that as a result of Castronova's and Carini's failure to act, she suffered adverse employment actions including denial of training opportunities, lower marks on employee performance evaluations and denial of a requested transfer.
The defendants argue in support of their motion to dismiss that: (1) the plaintiff's claims against the defendants in their official capacity are prohibited by the doctrine of sovereign immunity, and (2) the defendants in their individual capacities are statutorily immune pursuant to General Statutes § 4-165. The plaintiff argues in opposition in her memorandum that (1) sovereign immunity does not bar suits against state officials acting in excess of their statutory authority, and (2) General Statutes § 4-165 does not protect state officials from personal liability for acts engaged in during the performance of their duties when those acts are wanton, reckless or malicious.
 Discussion
The doctrine of sovereign immunity is a "well settled principle that the sovereign [the state] is immune from suit unless the state, by appropriate legislation, consents to be sued." (Internal quotation marks omitted.) Federal Deposit Ins. Corp. v. Peabody, N.E., Inc., 239 Conn. 93,101, 680 A.2d 1321 (1996). "[B]ecause the state can act only through its officers and agents, a suit against the state officer concerning a matter in which the officer represents the state, is in effect, against the state." Shay v. Rossi, 253 Conn. 134, 168, 749 A.2d 396, cert. denied,525 U.S. 1017, 119 S.Ct. 542, 142 L.Ed.2d 451 (1998). "It does not CT Page 2051 necessarily follow, however, that every action in which state officials or members of state agencies are named defendants and designated by official titles should be treated as an action against the state such as to clothe the defendants with immunity from suit . . . Sovereign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statute." (Citation omitted; internal quotation marks omitted.) Id., 169; see alsoAntinerella v. Rioux, 229 Conn. 479, 487, 642 A.2d 699 (1994). [T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." Kizis v. MorseDiesel International, Inc., 260 Conn. 46, 51, 794 A.2d 498 (2002). "[I]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint . . . construing them in a manner most favorable to the pleader." Lawrence Brundi, Inc.v. Branford, 247 Conn. 407, 410-11, 729 A.2d 271 (1999).
"In those cases in which it is alleged that the defendant officer is proceeding . . . in excess of his statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine . . . In such instances, the need to protect the government simply does not arise and the government cannot justifiably claim interference with its functions . . . Where [however] no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of his statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction." (Citations omitted; internal quotation marks omitted.) Shay v. Rossi, supra, 253 Conn. 169.
This court has previously acknowledged, in Hanrahan v. Egan, Superior Court, judicial district of New London at New London, Docket No. CV 01 0559287 (August 1, 2002) (32 Conn.L.Rptr. 655), that "[d]etermining whether particular conduct is in excess of a state official's statutory authority is not an easy task. Our Supreme Court has . . . observed that it `cannot . . . at this state of our jurisprudence, define with any degree of specificity where the line is . . .'" Hanrahan v. Egan, supra, Superior Court, Docket No. CV 01 0559287, quoting Shay v. Rossi, supra,253 Conn. 172. The court in Shay further stated that, "in order to overcome sovereign immunity, [a plaintiff] must do more than allege that the [defendant's] conduct was in excess of . . . statutory authority; [the plaintiff] must also allege or otherwise establish facts that reasonably support those allegations." Shay v. Rossi, supra, 174-75.
Other Supreme Court decisions also provide some guidance. InAntinerella v. Rioux, supra, 229 Conn. 479, a high sheriff who tried to CT Page 2052 fire a deputy sheriff to further his own financial gain through a statutorily prohibited fee-splitting agreement with various deputy sheriffs was held to have exceeded his authority and denied the protection of sovereign immunity. The court, in Antinerella, stated that when a "state employee acts solely to further his or her own illegal scheme and not to carry out government policy, there is no reason to provide immunity from suit." Id., 497.
The court in Shay v. Rossi, supra, reached a similar conclusion. The plaintiffs in Shay alleged that the Department of Children and Families unjustifiably filed neglect and abuse petitions against them. The Supreme Court stated: "[T]he critical factual allegations in the plaintiffs' complaint are that: (1) the neglect and abuse petitions were filed without probable cause and in the face of overwhelming evidence of the absence of abuse and neglect; (2) the defendants' refusal to withdraw the petitions and their insistence that [the plaintiff] Stephen Shay undergo in-home supervision and counseling were contrary to the evidence in the record and the advice of department staff; and (3) the defendants' conclusion that neglect and abuse of the Shay children had been confirmed was without foundation, unreasonable, arbitrary, wilful, wanton, reckless and malicious, and 'designed to vindicate and legiti[mize] their handlingof the Shay case which was, from the outset, unlawful, uncaring, andunnecessary' . . . These allegations, including the last allegation in particular, read broadly in the plaintiffs' favor, as they must be . . . charge the defendants with improper and self-serving motives in filing neglect and abuse petitions, in pursuing them for as long as they did, and in pursuing the in-home supervision of the family for as long as they did . . . In Antinerella v. Rioux, supra, 229 Conn. 497, we stated that when `the state employee acts solely to further his or her own illegal scheme and not to carry out government policy, there is no reason to provide immunity from suit.' Similarly, if the defendants here acted solely in order to justify their own prior unjustified conduct, and not to carry out the government policy with which they were entrusted, there would be no reason to provide immunity from suit." (Citation omitted; emphasis in original.) Id., 173-74.
In Shay, the court rejected the argument that in order for state officials to have acted in excess of their statutory authority "their conduct must be shown to have been so far outside their normal duties that they in effect had acted in the `clear absence of all jurisdiction.'" Id., 170-71. Nor was the court persuaded by the law of other jurisdictions suggesting "that all it takes to trigger the [in excess of statutory authority] doctrine is to establish, by a process of statutory interpretation, that the [official's] conduct was unauthorized." Id., 171. CT Page 2053
Construed in the manner most favorable to the plaintiff, the alleged statements made by Bubar, and the alleged failures of Carini and Castronova to comply with Executive Order No. Sixteen are actions in excess of their statutory authority. The plaintiff does more than simply allege that the defendant Bubar's conduct was in excess of statutory authority. The plaintiff alleges in counts one and three that the defendant Bubar made defamatory statements and specifies what the statements were, how they were made, to whom and the injuries suffered as a result. While the allegations are not criminal violations of the law, if true, they give rise to serious civil actions. The making of defamatory statements is in excess of the defendant Bubar's statutory authority, and, therefore, are not shielded from suit by the doctrine of sovereign immunity.
In counts two and four, the plaintiff alleges violations of42 U.S.C. § 1983 by Carini and Castronova for violating her equal protection rights and due process rights guaranteed to her by thefourteenth Amendment to the United States Constitution. These claims are based on the Carini's and Castronova's alleged failures to investigate, or to initiate an investigation, of a report of violence in the work place alleged to have been committed by the plaintiff. The plaintiff has alleged that such failures are in contradiction to a requirement under an executive order addressing violence in the workplace. These allegations, also construed in the manner most favorable to the plaintiff, are sufficient to support a conclusion that the defendants acted in excess of statutory authority such that the defendants are not shielded by the doctrine of sovereign immunity. The defendants' motion to dismiss the plaintiff's complaint as asserted against them in their official capacity is therefore denied.
The court must next address whether the defendants in their individual capacities are statutorily immune pursuant to General Statutes § 4-165, which provides in pertinent part that, "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment."
In Shay v. Rossi, supra, 253 Conn. 134, our Supreme Court held that the meaning of the phrase "wanton, reckless or malicious" in § 4-165 is identical to the meaning of "wanton, reckless, wilful, intentional and malicious" conduct in the common-law context: "In order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences CT Page 2054 of one's acts . . . [Such conduct] is more than negligence, more than gross negligence . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Id., 181.
In Okwu v. Meo, Superior Court, judicial district of Waterbury, Docket No. CV 01 0166397 (April 4, 2002, Pittman, J.), a case analogous to the present one, the plaintiff alleged that the defendant, a coworker at a community college, accused him of making threatening remarks and went to the college authorities with the accusations. The plaintiff denied making the threats and asserted claims of slander and slander per se, interalia, against the defendant. The plaintiff, in her complaint, alleged that the defendant's statements were untrue and malicious. The defendant moved to dismiss, alleging that as an employee of the state, she is immune from the suit, either as an agent of the state or, in her individual capacity under General Statutes § 4-165. The court, Pittman, J., denied the defendant's motion to dismiss, stating: "The court reads the complaint as alleging a personal, intentional act on the part of the defendant, which was committed out of malice and not in furtherance of any State policy." Id. "Conn. Gen. Stat. § 4-165 does not shield a person employed by the State from personal liability for intentional malicious acts." Id.
To survive the motion to dismiss, the plaintiff's complaint must contain allegations sufficient to bring it within the "wanton, reckless, wilful, intentional and malicious" exception of § 4-165. If, as alleged, Bubar stated to her fellow employees that "[the plaintiff] put her hands on my neck and choked me so hard I could not feel my feet," the statement may be slanderous if she knew it to be untrue. Such conduct, as alleged, is "wanton, reckless, wilful, intentional and malicious." Bubar's filing of a false report and making false statements, which the plaintiff claims injured her reputation and professional career, may rise to the level of reckless disregard of rights or safety of others or of the consequences of her actions.
The plaintiff alleges that the defendants Carini and Castronova did not investigate an allegation of violence in the work place committed by the plaintiff. The plaintiff's complaint states that Carini and Castronova were required by an executive order to initiate an investigation into the CT Page 2055 report of violence in the workplace and failed to do so. (Plaintiff's Complaint, count two ¶ 9 and count four ¶ 9.) The plaintiff further alleges that as a result of Carini's and Castronova's failure to do what they were required to do, Bubar's allegations were not refuted and the plaintiff suffered adverse employment actions. Construing these allegations in the manner most favorable to the plaintiff, Carini's and Castronova's failures to comply with the order is "wanton, reckless, wilful, intentional and malicious."
As the defendants' actions constitute wanton, reckless, wilful, intentional and malicious conduct, they are not entitled to statutory immunity under Sec. 4-165; the motion to dismiss is denied.
 Conclusion
The defendants' motion to dismiss is denied in its entirety as the defendants are not entitled to sovereign or statutory immunity. The alleged conduct of the defendants is sufficient at this stage of the proceedings to support the conclusion that the conduct was in excess of their statutory authority and was wanton, reckless, wilful, intentional and malicious.
D. Michael Hurley
Judge Trial Referee